UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LYLE JONES, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-07-cv-4320 |
| § | |
| LYNDEN AIR FREIGHT, INC., § | |
| § | |
| § | |
| § | |
| Defendant. § | |

### MEMORANDUM AND ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. No. 19) and Motion for Sanctions (Doc. No. 21). After considering the parties' filings and the applicable law, the Court finds that Defendant's Motion for Summary Judgment should be granted, and Defendant's Motion for Sanctions should be denied.

I.  BACKGROUND

Plaintiff Lyle Jones is suing Defendant Lynden Air Freight, Inc. ("LAF") for alleged violations of Title VII of the Civil Rights Act of 1964, 28 U.S.C. §§ 2000(e)- 2000(e)(17). In October 1998, Plaintiff and Defendant entered into a contract entitled "Cartage Agreement," under which Plaintiff was to provide "break bulk, transfers, pick ups, transport and delivery" for LAF shipments to and from the airport. (Doc. 19, Ex. A at ¶ 2.) The agreement took effect on November 1, 1998, and was to continue on a month-to-month basis. (*Id.* at ¶ 16.) Either party was allowed to cancel the agreement at any time, provided the cancelling party gave the other party thirty-days written notice. (*Id.*)

Under the terms of the Agreement, Plaintiff was directed to act as an "independent contractor" and was not authorized to "make any contract, agreement, warranty, or

1

representation on behalf of LAF, or to create any obligation express or implied on behalf of LAF." (*Id.* at ¶ 12.)[1] Plaintiff was directed to use his own vehicles for pick-ups and deliveries and to maintain them at his own expense. (*Id.* at ¶ 4.) The Cartage Agreement allowed Plaintiff to employ and to direct all persons providing the relevant services and stated that all such persons would be subject to Plaintiff's sole control and direction. (*Id.* at ¶ 3.) Plaintiff was directed to advise these persons in writing that they were not LAF employees. (*Id.*) Plaintiff was responsible for ensuring that these persons were properly qualified and licensed, and for paying all their wages and payroll taxes, including social security. (*Id.*)

Plaintiff characterizes his employment relationship with Defendant as that of an independent contractor. (Pl.'s Admis. # 4; Jones Dep. 16:22-17:1.) He purchased his own health insurance (Pl.'s Admis. # 26) and paid self-employment tax on the income he received from Defendant. (*Id.* at # 27.) He maintained his own vehicle (*Id.* at # 32) and purchased all necessary fuel and supplies. (*Id.* at # 34.) In order to receive payment, Plaintiff submitted invoices to Defendant (*Id.* at # 29); he did not receive a paycheck from LAF (*Id.* at # 27). As Accordingly, Defendant did not withhold FICA taxes when it paid Plaintiff. (*Id.* at # 28.) Plaintiff was responsible for providing his own insurance, including employer's liability insurance, although he actually did not maintain such insurance for part of the time he was working with Defendant. (Jones Dep. 19:2-25.) He paid for his own commercial license and registration. (*Id.* at 28:17-25.)

---

[1] In his Response, Plaintiff asserts that the copy of the Cartage Agreement attached to Defendant's Motion for Summary Judgment is materially different from that which Plaintiff signed. The Court does not find this argument persuasive. Plaintiff has only identified one difference between the two documents, which is that Defense counsel added Bates stamp numbers to its copy of the Cartage Agreement. (Jones Dep. 133:23-134:21.) Additionally, Plaintiff authenticated the copy of the Cartage Agreement attached to his Admissions that is identical to Defendant's copy. (Doc. No. 19, Ex. B at ¶ 1.)

The Cartage Agreement did not prohibit Plaintiff from working for other companies or business entities while he worked under the Cartage Agreement. (*Id.* at # 36.) In fact, during the time he worked with Defendant, he performed pick-up and delivery services for different companies, including Bertling Logistics, Champion Logistics, and Hazmat Packers. (Jones Dep. 8:22-24.) He had the right to refuse pick-ups and deliveries requested by Defendant, and he exercised that right. (*Id.* at 32:18-24.) Defendant used other independent contractors if Plaintiff was too busy to perform a job. (*Id.* at 33:10-14.)

At some period during his relationship with LAF, Plaintiff received a series of offensive emails from two LAF employees, Gwen Davis and Joyce Keehan. (Pl.'s Compl. ¶ 6.) On two occasions, Joyce Keehan introduced Plaintiff as "a pervert" to female employees. (Jones Dep. 74:9-15.) Between December 2006 and February 2007, Plaintiff lodged oral complaints about this behavior with four LAF employees, including Ken Long, Keehan's boss. (*Id.* at 81:3-8.) Long later informed Plaintiff that he had issued Keehan a written reprimand. (*Id.* at 79:1-4.)

Plaintiff subsequently felt that he suffered retaliation for reporting Keehan's behavior. (*Id.* at 114:7-19.) In February 2008, he stopped performing services for Defendant under the Cartage Agreement. (*Id.* at 120:7.) Plaintiff offers contradictory accounts of how the Cartage Agreement was terminated. In his Complaint, Plaintiff asserts that his work environment became so hostile that he was forced to resign. (Pl.'s Compl. ¶ 9.) In response to Defendant's Request for Admissions, Plaintiff admitted that he did not resign (Pl.'s Admis. # 8.), and that Defendant did not terminate his employment. (*Id.* at # 4.) In his deposition, Plaintiff alleged that he was fired when Roger Obregon, an LAF employee, told him that Defendant would have someone else do their cartage starting the next Monday. (Jones. Dep. 119:14-15.) No one at LAF ever specifically told Plaintiff that he was terminated or fired. (*Id.* at 119:16-21.)

3

Plaintiff filed suit, claiming that Defendant discriminated against him on the basis of his sex by creating a hostile work environment, in which Plaintiff was sexually harassed, and by constructively discharging Plaintiff. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II. ANALYSIS

### a. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. FED. R. CIV. P. 56(e)(1); *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### b. "Employee-Employer" Relationship

4

"Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin." *Grimes v. Texas Dep't of Mental Health*, 102 F.3d 137, 140 (5th Cir. 1996). It is well-settled that Title VII requires a plaintiff to demonstrate that he had an "employment" relationship with the defendant. *Diggs v. Harris Hospital-Methodist, Inc.*, 847 F.2d 270, 271 (5th Cir. 1988) (citing *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1159 (5th Cir. 1986)). To determine whether a plaintiff should be considered an "employee" under Title VII, the Fifth Circuit employs a hybrid economic realities/common law control test. *Diggs*, 847 F.2d at 271. The economic realities/common law control test requires the court to consider the economic realities of the work relationship and the extent to which the one for whom the work is done has the right to control the details and means by which the work is performed. *Id.* (citing *Mares v. Marsh*, 777 F.2d 1066, 1067 (5th Cir. 1985)). In applying the test, courts should also consider the following factors:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; *i.e.*, by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Diggs*, 847 F.2d at 272-273 (citing *Broussard*, 789 F.2d at 1160). No one factor is determinative, but the "right to control" is an especially crucial factor. *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 506 (5th Cir.1994). This "right to control" turns on whether the alleged employer has the right to hire and fire the individual, the right to supervise the individual, and the right to set the individual's work schedule. *Deal v. State Farm County Mutual Ins. Co.*, 5 F.3d 117, 119 (5th Cir. 1993).

As to the control factor, both Plaintiff and Defendant had the ability to terminate the contract by providing the other party with thirty-days notice. Defendant did not, therefore, have the unilateral right to fire Plaintiff; instead, both parties had an equal right to end the contractual relationship. *Compare E.E.O.C. v. Fawn Vendors, Inc.*, 965 F.Supp. 909, 912 (S.D.Tex. 1996) (holding that, because a services contract gave the defendant company the right to fire the plaintiff at any time, the defendant had the right to fire the plaintiff). Plaintiff has produced no evidence suggesting that Defendant supervised Plaintiff's work or set Plaintiff's work schedule. In his Admissions, Plaintiff denies that he controlled when and where he worked (Pl.'s Admis. # 20) and that he performed the work at his sole control and direction. (*Id.* at # 14.) These assertions are belied by his deposition testimony that he was allowed to refuse performing pick-ups and deliveries for Defendant if he chose to and that Defendant sometimes relied on other contractors if Plaintiff was not available. Plaintiff also exercised complete control over his materials and his staff.

The "economic realities" portion of the test evaluates whether, as a matter of economic reality, the plaintiff is dependent upon the business to which they render service. *Diggs v. Harris Hospital-Methodist, Inc.*, 847 F.2d 270, 271 n. 3 (5th Cir. 1988) (citing *Mares*, 777 F.2d at 1067)). Plaintiff was demonstrably not dependent on Defendant for conducting his business. While it is possible that Defendant was Plaintiff's primary customer, Plaintiff was free to perform similar work for other companies throughout the contractual period. *See e.g. Diggs*, 847 F.2d at 271 (holding that while the plaintiff, an obstetrician-gynecologist, was dependent on having hospital staff privileges to pursue her practice, there was nothing in her agreement with the defendant hospital to prevent her from obtaining privileges at another hospital).

Additionally, Plaintiff was not dependent on Defendant for health insurance, employment benefits, or equipment.

Next, the Court considers the eleven factors set forth in *Broussard*, 789 F.2d at 1160. There is no evidence in the record indicating that Plaintiff's work for Defendant, which primarily consisted of picking-up and making deliveries, required Defendant's close supervision. Neither party presents evidence regarding the amount of skill required to perform Plaintiff's duties; the Fifth Circuit has noted that truck driving, which is similar to the work Plaintiff was performing, requires "not an inconsiderable amount of skill." *Broussard*, 789 F.2d at 1161. Plaintiff testified that he performed some work on Defendant's computer system (Jones Dep. 113:13-17); the evidence indicates that such tasks required him, at times, to work at Defendant's place of business. Apart from this testimony, however, there is no evidence that Defendant furnished Plaintiff's place of work; there is uncontroverted evidence that Plaintiff provided his own vehicles and fuel. Plaintiff gave invoices to Defendant for jobs performed instead of receiving periodic pay checks. Plaintiff did not receive annual leave or retirement benefits; Defendant did not pay FICA taxes for Plaintiff. Defendant was readily able to replace Plaintiff's services when Plaintiff was unavailable.

The parties' contractual relationship lasted ten years, a significant amount of time, but this factor alone is not determinative, particularly when Defendant was not Plaintiff's exclusive source of business during that period. In *Lalik v. Roadrunner Dawes Freight Systems Inc.*, No. 4:07-CV-152-A, 2008 WL 33491, at *2 (N.D.Tex. April 22, 2008), our sister court found that the plaintiff truck driver who worked for the defendant for six years, under a series of one year, self-renewing contracts, was still considered an independent contractor even though he did not work for other firms during that period.

7

As discussed above, it is not possible to determine how the parties' relationship was actually terminated. Construing the facts in the light most favorable to Plaintiff, Defendant terminated the contract by providing Plaintiff insufficient oral notice. Finally, as to the parties' intentions, they clearly meant for Plaintiff to act as an independent contractor. He was labeled an independent contractor in the Cartage Agreement, and he described himself as such throughout discovery. Based on these undisputed facts, the Court finds, as a matter of law, that Plaintiff was an independent contractor and not an employee of Defendant.

### III.   DEFENDANT'S MOTION FOR SANCTIONS

Defendant requests that Plaintiff be sanctioned pursuant to FED. R. CIV. P. 11(b) because Plaintiff's "pleadings and actions" have been repeatedly harassing, caused unnecessary delay, needlessly increased the cost of litigation for Defendant and have continuously been made without any evidentiary or legal support. As specific grounds for sanctions, Defendant points to the fact that Plaintiff admitted that he is an independent contractor but still pursues his Title VII claim. Defendant also notes that Plaintiff failed to respond to any request for discovery without Defendant's filing a motion to compel, and that Plaintiff disregarded the Court's order compelling his responses. Plaintiff also failed to provide his designation of experts report despite the July 23, 2008 deadline.

Under Rule 11, before sanctions can be imposed, the court must identify some federal filing in which the counselor violated the rule that claims must be well-grounded in fact and in law and determine that her filings were submitted for an improper purpose. FED. R. CIV. P. 11; *Edwards v. General Motors Corp.*, 153 F.3d 242, 245 (5th Cir. 1998). The court must examine "whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990). The court considers

Case 4:07-cv-04320 Document 22 Filed in TXSD on 12/24/08 Page 9 of 10

three issues: (1) factual questions regarding the attorney's pre-filing inquiry and factual basis of the filing, (2) legal issues of whether the filing is warranted by existing law or a good faith argument, (3) and discretionary issues regarding an appropriate sanction. *See Id.* at 399; *St. Amant v. Bernard*, 859 F.2d 379, 381-82 (5th Cir. 1988).

A motion for sanctions must be made separately from any other motion and specifically describe the conduct that allegedly violates Rule 11(b). FED. R. CIV. P. 11(c)(2). Defendant did not file a separate motion for sanctions; rather, it combined its request with its Response to Plaintiff's Memorandum in Opposition to Motion for Summary Judgment. (Doc. No. 21.) Further, it apparently did not allow Plaintiffs twenty-one days to withdraw the offending paper or claim. FED. R. CIV. P. 11(c)(2). Defendant's Motion for Rule 11 Sanctions should therefore be dismissed for failure to comply with the Rule's requirements.[2]

## IV. CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED**. Defendant's Motion for Sanctions is **DENIED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 24th day of December, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY

---

[2] Even if Defendant had complied with the requirements of Rule 11, the Court would likely decline to grant sanctions. Defendant has not made any allegations indicating that Plaintiff's counsel's pre-filing investigation was inadequate or that his claims were pled in bad faith.

**AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.**